**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JULIE HODGES, | |
|       Plaintiff, | |
| v. | Case No. 3:25-CV-00344-NJR |
| EFFINGHAM COMMUNITY UNIT SCHOOL DISTRICT #40, | |
|       Defendant. | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Julie Hodges brings this employment discrimination action against her former employer Effingham Community Unit School District #40 ("Effingham"). Hodges claims that Effingham constructively discharged her in violation of state and federal law after she refused to get vaccinated against COVID-19 and declined to undergo weekly testing as an alternative to vaccination. She advances claims under the Illinois Human Rights Act, 775 ILCS 5/2-102 ("IHRA"), and Title VII of Civil Rights Act, 42 U.S.C. 2000e, *et seq.* ("Title VII").

Effingham removed the case to federal court based on federal question and supplemental jurisdiction. (Doc. 1); *see* 28 U.S.C. §§ 1331 and 1367. It then moved to dismiss Hodges's complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 7). Hodges filed a response in opposition, and Effingham a reply. (Docs. 9, 10 respectively). Effingham's motion to dismiss is thus fully briefed and ripe for disposition.

## BACKGROUND

On September 3, 2021, Governor J.B. Pritzker issued Executive Order 2021-22 (the "Executive Order")[1] requiring "school personnel"[2] to either obtain a full vaccination against COVID-19 or submit to weekly testing. (Doc. 7-2, p. 4-5 (Exec. Order); Doc. 1-1, ¶ 5 (Compl.)). Effingham implemented these requirements by enforcing a "policy" requiring "all . . . employees" who were not vaccinated, including Hodges, to submit to weekly COVID-19 testing (the "Policy"). (*Id.* ¶ 4).

Hodges objected to the vaccine because it "violates her moral conscience." (*Id.* ¶ 6). This is so, Hodges explains, because she holds "sincere beliefs" that prohibit her from getting a vaccine that was ostensibly researched and developed through "the use of stem cells or other materials obtained from aborted fetuses." (*Id.* ¶ 8). Hodges also refused to be vaccinated *or tested* because she "holds sincere beliefs that prevent her from submitting to healthcare procedures which she, a competent adult, does not believe are medically necessary." (*Id.* ¶ 7). The testing requirement also conflicted with Hodges's "moral conscience" because she "holds sincere beliefs that prevent her from submitting to or

---

[1] Effingham provided a copy of the Executive Order as an attachment to its motion to dismiss. (Doc. 7-2, p. 1-8). Although a motion to dismiss under Rule 12(b)(6) ordinarily limits the inquiry to the four corners of the complaint, the Court will consider the Executive Order under the "incorporation by reference" doctrine. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (courts may consider "documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim") (citation modified). Here, the complaint cites the Executive Order as Effingham's purported legal basis for the requirement that its employees, including Hodges, get vaccinated or submit to weekly COVID-19 testing. (Doc. 1-1, ¶¶ 4-5). The Executive Order is thus referred to in the complaint and central to Hodges's claims.

[2] Hodges's complaint does not identify her position at Effingham. Nevertheless, because she brings this action against the Effingham Community Unit School District #40 and alleges that she was employed there, the Court assumes Hodges qualified as "school personnel" under the Executive Order. "School personnel" is broadly defined as "any person who . . . is employed by, volunteers for, or is contracted to provide services for a School or school district." (Doc. 7-2, p. 4).

participating in workplace procedures which arbitrarily discriminate between employees on the basis of healthcare choices made pursuant to freedom of conscience." (*Id.* ¶ 9).

On September 7, 2021, Hodges sent Effingham a letter objecting to the Policy's alternative requirements.[3] (*Id.* ¶ 10). The letter allegedly requested an "exemption" from the vaccination requirement based on Hodges's "religious beliefs," and explained that the testing requirement conflicted with her "religious belief that testing for a disease when she is not sick is a violation of the human body." (*Id.* ¶¶ 11-12).

On September 16, 2021, Effingham denied Hodges's request for an exemption from the vaccine or testing requirements.[4] (*Id.* ¶ 13). Effingham allegedly denied Hodges's request because she "did not provide information about her religious beliefs and religion." (*Id.* ¶ 14). On September 21, 2021, Hodges submitted a second exemption request (the complaint does not elaborate on the content of the second request). (*Id.* ¶ 15). Effingham responded to the second request by demanding that Hodges either provide proof of vaccination or submit to weekly testing by September 27, 2021. (*Id.* ¶ 16). Effingham never asked Hodges about her religious beliefs or the religion she subscribed to (*Id.* ¶¶ 17, 18), nor did it "engage in discussion with [Hodges] to determine whether any accommodation of [her] religious beliefs might be possible." (*Id.* ¶ 19). Effingham also did not discuss with Hodges whether accommodating her religious beliefs would impose an undue burden on it. (*Id.* ¶ 20). It simply denied Hodges's exemption requests

---

[3] The timeline of Hodges's allegations is a bit confusing. She claims she was first notified of the Policy's requirements on September 15, 2021. (*Id.* ¶ 1). It is thus unclear why she would have sent Effingham a letter objecting to these requirements on September 7, 2021.

[4] The complaint only alleges that Hodges "objected" to the testing requirement; it does not allege that she also sought an exemption from the testing requirement. (*Id.* ¶ 12).

"outright." (*Id.* ¶ 21).

On September 27, 2021, Hodges was placed on unpaid leave because she refused to comply with the Policy.  (*Id.* ¶ 22). Hodges remained on unpaid leave until February 2022, when Effingham invited her to return to work because vaccinations, testing, and masking had become optional. (*Id.* ¶ 24). Hodges told Effingham that she was willing to return but only if a letter confirming her exemption from vaccination, testing, and mask wearing requirements was placed in her personnel file. (*Id.* ¶ 25). Effingham declined to document Hodges's exemption from these requirements in her personnel file.  (*Id.* ¶ 27). Hodges took this as Effingham's "refusal" to "accommodate her religious beliefs," and determined that she had no choice but to resign. (*Id.* ¶ 28).

Hodges resigned from her position at Effingham on March 28, 2022. (*Id.* ¶ 29). On June 2, 2022, Hodges filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") alleging constructive discharge based on her religious beliefs. (*Id.* ¶ 30). Hodges also filed a separate charge with the Equal Employment Opportunity Commission ("EEOC") alleging the same theory of liability against Effingham. (*Id.* ¶ 31). On October 25, 2024, the IDHR issued a "Notice of Substantial Evidence," and on October 31, 2024, the EEOC issued a right to sue letter. (*Id.* ¶¶ 34-35). This action followed.

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual

Page 4 of 11

allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013).

To survive a Rule 12(b)(6) motion, the plaintiff's allegations must support a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible where a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A reviewing court must "ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). This means that the plaintiff must "provide some specific facts to support the legal claims asserted in the complaint," and offer "enough details about the subject-matter of the case to present a story that holds together." *Bilek*, 8 F.4th at 586 (citation modified).

## DISCUSSION

The Court will review Hodges's claims under the IHRA and Title VII together because their respective legal frameworks are "essentially identical." *Begwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016) (quotation omitted); *see also Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 754 & n.4 (7th Cir. 2014) (examining Title VII and Illinois state law claims together because "[t]he standards for Illinois state-law discrimination claims mirror those for Title VII claims."). A Title VII claim based on the failure to accommodate an employee's religious beliefs requires the plaintiff to show (1) a conflict between a religious observance or practice and an employment requirement; (2) notice to the employer; and (3) that the religious observance or practice was the basis

for an adverse employment action. *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013). Effingham contests the sufficiency of Hodges's allegations with respect to the first and third elements of her prima facie case.

Effingham's argument that the complaint fails to allege a "religious belief" that conflicted with the Policy is a tough one to win on a Rule 12(b)(6) motion. This is so because the question of whether Hodges's request for an exemption was religiously motivated can lead to unnecessary exploration of the commands of her religion. Such judicial forays are discouraged because "[c]ourts are not arbiters of scriptural interpretation." *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1010 (7th Cir. 2024) (quoting *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 716 (1981)). Thus, "[i]f an accommodation request can be read on its face as plausibly based in part on an aspect of the plaintiff-employee's religious belief or practice, that is enough to survive a motion to dismiss." *Id.* at 1011.

"At the pleading stage, an employee seeking an accommodation in the form of an exemption from an employer's vaccine mandate must allege facts plausibly permitting an inference that some 'aspect' of the request is based on the employee's 'religious observance and practice' or 'belief.'" *Id.* at 1009 (quoting 42 U.S.C. § 2000e(j)). This means that the employee must "plausibly base[] her vaccination exemption request at least in part on an aspect of her religious belief or practice." *Id.*

Hodges alleges that she objected to the Policy's vaccination requirement due to her "religious beliefs" because, as she saw it, the COVID-19 vaccine was developed through the "use of stem cells or other materials obtained from aborted fetuses." This

Page 6 of 11

allegation permits an inference that Hodges's religion compels her opposition to abortion. The religious nature of her objection to the vaccination requirement then follows logically because, in her view, the COVID-19 vaccine is derived from abortion procedures. Hodges thus refused to get vaccinated because she believes that doing so would be tantamount to an endorsement of abortion. At this stage, no more is required to conclude that Hodges's objection to the Policy's vaccination requirement was based on her religious beliefs. "It is not within [the courts'] province to evaluate whether particular religious practices or observances are necessarily orthodox or even mandated by an organized religious hierarchy." *Adeyeye*, 721 F.3d at 452. Accordingly, a generous reading of the complaint plausibly suggests that the Policy's vaccine requirement created a conflict between an employment requirement and Hodges's religion.

But the Policy, as noted, gave employees the *option* of getting vaccinated or submitting to weekly testing for COVID-19. Hodges's allegations therefore must also support a religious objection to the testing requirement to survive Effingham's motion to dismiss. And on this point, the allegations regarding Hodges's objection to the testing requirement are notably (albeit subtlety) different from those regarding her objection to the vaccine requirement. Hodges alleges that she refused vaccination *and testing* because she "holds sincere beliefs that prevent her from submitting to healthcare procedures which she, a competent adult, does not believe are medically necessary." The testing requirement also conflicted with Hodges's "moral conscience" because she "holds sincere beliefs that prevent her from submitting to or participating in workplace procedures which arbitrarily discriminate between employees on the basis of healthcare choices

made pursuant to freedom of conscience." Notably absent from the complaint is any nexus between Hodges's refusal to submit to testing and a religious belief. This omission is problematic for Hodges because her failure to explain how the testing requirement burdened her religious beliefs means she has not pled a conflict between an employment requirement (COVID-19 testing) and her religion. *See Jackson v. Methodist Health Servs. Corp.*, 121 F.4th 1122, 1127 (7th Cir. 2024).

Hodges's objection to testing may have been based on sincerely held moral or personal views. But that is not enough to state a viable religious discrimination claim under Title VII. "The difference [between personal and religious beliefs] is important because only *religious* beliefs, observances, and practices must be accommodated." *Adeyeye*, 721 F.3d at 451 (emphasis in original). Indeed, the complaint appears to expressly distinguish Hodges's objection to the vaccine from her objection to testing. Hodges's objection to the vaccine, as noted, is based on her faith-based disagreement with the use of stem cells from abortion procedures to research and develop it. Her objection to testing, on the other hand, is based on her concerns about personal agency and health. She alleges that as a "competent adult," she possesses the right to make decisions regarding her healthcare, including the right to refuse procedures or care that, in her view, are not "medically necessary." The testing requirement, as Hodges saw it, presented an affront to her right to make such decisions for herself. And while the Court will not second-guess Hodges's assertion of agency over her healthcare, it is apparent that her objection to the testing requirement was not based on her religion.

The Seventh Circuit's decision in *Jackson v. Methodist Health Services* is directly on

point. *Jackson* dealt with the same Executive Order at issue here, and the plaintiff objected to her employer's implementation of it in nearly identical fashion: she refused to either get vaccinated against COVID-19 or undergo weekly testing. *Jackson*, 121 F.4th at 1124. The plaintiff was placed on unpaid leave and later discharged due to her refusal to comply with the Executive Order. *Id.* The district court dismissed the plaintiff's Title VII claim because she "had not identified any religious tenet that was inconsistent with the testing requirement." *Id.* at 1125. The Seventh Circuit affirmed. The plaintiff had "identified no objection to testing that is grounded in her religious beliefs. She opposes the testing requirement, yes, but she cites no religious tenet that is at odds with the testing requirement and no religious practice with which testing would interfere." *Id.* at 1126. The lack of a nexus between the plaintiff's objection to COVID-19 testing and her religious faith was therefore fatal to her Title VII claim. *Id.* at 1127.

The facts of this case track those in *Jackson* with notable precision. Indeed, in its current form, the complaint offers no meaningful factual distinction from *Jackson*. Even an indulgent view of the complaint does not reveal a religious basis for Hodges's objection to the testing requirement. At best, she claims in conclusory fashion that her request for an exemption from the vaccine and testing mandates was based on her "religious beliefs." But that, without more, is not enough. *Reed v. Great Lakes Co.*, 330 F.3d 931, 935-36 (7th Cir. 2003). To state a viable claim, a plaintiff must explain the religious nature of the conflict necessitating the accommodation. *See id.* at 936. ("Even if [the plaintiff] wears a religious symbol, such as a cross or a yarmulka, this may not pinpoint his particular beliefs and observances."). Here, the complaint fails to clear this initial

hurdle with respect to the testing requirement because it bases Hodges's objection on her *personal* views of medical necessity. *See Passarella*, 108 F.4th at 1011 ("Religious accommodation requests rooting themselves entirely in safety considerations with no plain and express connection to religion will fall outside of the statute even at the pleading stage.").

Other courts have reached similar conclusions in the context of religious accommodation requests arising out of COVID-19 vaccine and testing requirements. *See e.g.*, *Nelson-Godfrey v. Cook Cnty.*, 735 F. Supp. 3d 976, 980 (N.D. Ill. 2024) (invocation of "vaguely religious themes" and "broad appeals to personal health" insufficient to state qualifying "religious observance" that supported Title VII claim); *Guthrie-Wilson v. Cook Cnty.*, No. 1:23-cv-362, 2023 WL 8372043, at *3 (N.D. Ill. Dec. 4, 2023) (dismissing Title VII claim where "plaintiff's stated opposition to the Covid-19 [vaccine] is facially tied to her view that receiving the vaccine is incompatible with a 'healthy lifestyle' and 'could bring her harm.'"); *Egelkrout v. Aspirus, Inc.*, No. 22-cv-118, 2022 WL 2833961, at *3 (July 22, 2022) (same where basis of plaintiff's refusal to submit to testing was "for personal and medical reasons"). Consistent with the logic of *Jackson* and these instructive decisions, the Court finds that Hodges's complaint fails to satisfy the first element of her prima facie case under Title VII.[5]

---

[5] The Court does not reach Effingham's argument regarding the third element of Hodges's prima facie case because her failure to satisfy the first is dispositive. Nevertheless, if Hodges decides to file an amended complaint, she should include factual allegations that address all elements of a Title VII claim, to the extent she can do so in good faith.

CONCLUSION

For these reasons, Defendant Effingham Community Unit School District #40's Motion to Dismiss (Doc. 7) is **GRANTED**. Hodges is **GRANTED** leave to file an amended complaint on or before **April 13, 2026**.

**IT IS SO ORDERED.**

**DATED:  March 13, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**