IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JULIE HODGES,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**EFFINGHAM COMMUNITY UNIT SCHOOL DISTRICT #40,**<br><br>**Defendant.** | **Case No. 3:25-CV-344-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Julie Hodges brings this employment discrimination action against her former employer, Effingham Community Unit School District #40 ("Effingham"). Hodges claims that Effingham constructively discharged her in violation of state and federal law after she refused to receive a vaccination or, alternatively, submit to weekly testing for COVID-19. She advances claims under the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/2-102 ("IHRA") and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

Effingham removed this action to federal court based on federal question and supplemental jurisdiction. (Doc. 1); *see* 28 U.S.C. §§ 1331 and 1367. Effingham then moved to dismiss Hodges' initial complaint under Federal Rule of Civil Procedure 12(b)(6), arguing: (1) that Hodges failed to adequately allege a religious observance or practice that conflicted with Effingham's vaccination and testing requirements and (2) that Hodges' religious beliefs were not the basis for the adverse employment action taken

against her. (Doc. 7). The Court granted Effingham's motion on the basis of its first argument and granted Hodges leave to file an amended complaint. (Doc. 11). Hodges filed her amended complaint on April 11, 2026. (Doc. 12). Effingham now moves to dismiss the amended complaint under Rule 12(b)(6) on the same grounds. (Doc. 13). Hodges filed a response in opposition, and Effingham filed a reply. (Docs. 14, 15). Thus, Effingham's motion is fully briefed and ripe for disposition.

## Background

On September 3, 2021, Governor J.B. Pritzker issued Executive Order 2021-22 ("EO-22")[1] requiring "school personnel" to either obtain a full vaccination against COVID-19 or submit to weekly testing. (Doc. 13-1, pp. 4-5). Effingham implemented these requirements by enforcing a mandatory COVID-19 vaccination policy requiring "all District employees who were not vaccinated" to undergo weekly testing ("the Policy"). (Doc. 12, ¶ 4).

Hodges, who was employed by Effingham as a paraprofessional, objected to receiving the vaccine because it "violates [her] moral conscience." (*Id.* ¶¶ 1, 7). This is so, Hodges explains, because she holds "sincere beliefs" that prohibit her from receiving a vaccine that was ostensibly researched and developed through "the use of stem cells or

---

[1] Effingham provided a copy of the EO-22 as an attachment to its motion to dismiss. (Doc. 13-1). Although a motion to dismiss under Rule 12(b)(6) ordinarily limits the Court's inquiry to the four corners of the complaint, the Court will consider EO-22 under the "incorporation by reference" doctrine. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (courts may consider "documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim") (citation modified). Here, the complaint cites the EO-22 as Effingham's purported legal basis for the requirement that its employees, including Hodges, get vaccinated for COVID-19 or otherwise submit to weekly testing. (Doc. 12, ¶ 5). EO-22 is thus referred to in the complaint and central to Hodges' claims.

other materials obtained from aborted fetuses." (*Id.* ¶ 8). Hodges also refused to be vaccinated or tested because she "holds sincere beliefs that prevent her from submitting to healthcare procedures which she, a competent adult, does not believe are medically necessary." (*Id.* ¶ 7). Further, Hodges objected to weekly COVID-19 testing based on a "religious belief that testing for a disease when she is not sick is a violation of Jesus' commands in the Scriptures," citing Matthew 9:12 for that proposition (*Id.* ¶ 13).

On September 7, 2021, Hodges sent Effingham a letter objecting to the Policy's requirements.[2] (*Id.* ¶ 11). The letter allegedly requested an "exemption" from the Policy based on Hodges' religious beliefs. (*Id.* ¶¶ 11-13). On September 16, 2021, Effingham denied Hodges' request for an exemption from the vaccine or testing requirements. (*Id.* ¶ 14). Effingham allegedly denied the request because Hodges "did not provide information about her religious beliefs and religion." (*Id.* ¶ 15).

On September 21, 2021, Hodges submitted a second exemption request, to which Effingham responded by demanding that she either provide proof of vaccination or submit to weekly testing by September 27, 2021. (*Id.* ¶¶ 16-17). According to Hodges, Effingham "did not engage in discussion with [her] to ascertain details about" her religious beliefs or religion. (*Id.* ¶¶ 18-19), nor did it "engage in discussion with [her] to determine whether any accommodation of [her] religious beliefs might be possible." (*Id.* ¶ 20). Effingham also did not discuss with Hodges whether accommodating her religious

[2] Hodges claims she was first notified of the Policy's requirements on September 15, 2021. (*Id.* ¶ 4). It is thus unclear why she would have sent Effingham a letter objecting to the Policy eight days beforehand.

beliefs would impose an undue burden on it. (*Id.* ¶ 21). Effingham simply denied Hodges' exemption requests "outright." (*Id.* ¶ 22).

On September 27, 2021, Hodges was placed on unpaid leave after refusing to comply with the Policy. (*Id.* ¶ 23). She remained on unpaid leave until February 2022, when Effingham invited her to return to work because vaccination, testing, and masking had become optional. (*Id.* ¶¶ 24-25). Hodges notified Effingham that she was willing to return to work only if a letter confirming her exemption from vaccination, testing, and masking requirements was placed in her personnel file. (*Id.* ¶ 26). Effingham declined to place any such letter in Hodges' personnel file, and Hodges thereafter resigned from her employment on March 28, 2022. (*Id.* ¶¶ 28-31).

On June 2, 2022, Hodges filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") alleging that Effingham constructively discharged her based on her religious beliefs. (*Id.* ¶ 31). Hodges also filed a separate charge with the Equal Employment Opportunity Commission ("EEOC") alleging the same theory of liability against Effingham. (*Id.* ¶ 32). On October 25, 2024, the IDHR issued a "Notice of Substantial Evidence," and on October 31, 2024, the EEOC issued a right to sue letter. (*Id.* ¶¶ 35-36). This action followed.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual

allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013).

To survive a Rule 12(b)(6) motion, the plaintiff's allegations must support a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible where a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A reviewing court must "ask itself could these things have happened, not did they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). This means that the plaintiff must "provide some specific facts to support the legal claims asserted in the complaint," and offer "enough details about the subject-matter of the case to present a story that holds together." *Bilek*, 8 F.4th at 586 (citation modified).

## DISCUSSION

The Court will review Hodges' claims under the IHRA and Title VII together because their respective legal frameworks are "essentially identical." *Begwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016) (quotation omitted); *see also Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 754 & n.4 (7th Cir. 2014) (examining Title VII and Illinois state law claims together because "[t]he standards for Illinois state law discrimination claims mirror those for Title VII claims."). A Title VII claim based on the failure to accommodate an employee's religious beliefs requires the plaintiff to allege (1) a conflict between a sincerely held religious observance or practice and an employment requirement; (2) notice to the employer; and (3) that the religious observance

or practice was the basis for an adverse employment action. *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013). "Once an employee establishes a prima facie case of religious discrimination, the burden shifts to the employer to make a reasonable accommodation of the religious practice or show that any accommodation would result in undue hardship to the employer." *Bowlin v. Bd. of Directors, Judah Christian Sch.,* 167 F.4th 469, 475 (7th Cir. 2026).

**I. Prima Facie Case**

Effingham contests the sufficiency of Hodges' allegations with respect to the first and third elements of her prima facie case. Additionally, Effingham argues that accommodating Hodges' religious beliefs by permitting her to work without complying with EO-22 would have imposed an undue hardship on Effingham.

"At the pleading stage, an employee seeking an accommodation in the form of an exemption from an employer's vaccine mandate must allege facts plausibly permitting an inference that some 'aspect[]' of the request is based on the employee's 'religious observance and practice' or 'belief.'" *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024) (quoting 42 U.S.C. § 2000e(j)). Thus, "[i]f an accommodation request can be read on its face as plausibly based in part on an aspect of the plaintiff-employee's religious belief or practice, that is enough to survive a motion to dismiss." *Id.* at 1011.

Hodges alleges that she objected to the Policy's vaccination requirement due to her "religious beliefs" because, in her view, the COVID-19 vaccine was developed through the "use of stem cells or other materials obtained from aborted fetuses." This allegation permits an inference that Hodges' religion compels her opposition to abortion,

and she believes that receiving the COVID-19 vaccine would be tantamount to an endorsement of abortion. At this stage, no more is required to conclude that Hodges' objection to the Policy's vaccination requirement was based on her religious beliefs. "It is not within [the Court's] province to evaluate whether particular religious practices or observances are necessarily orthodox or even mandated by an organized religious hierarchy." *Adeyeye*, 721 F.3d at 452.

As noted, the Policy gave employees the option of either receiving the vaccine or submitting to weekly testing for COVID-19. Hodges' allegations therefore also must support a religious objection to the testing requirement to survive Effingham's motion to dismiss. On this point, Hodges alleges that she sent a letter to her employer refusing testing because "testing for a disease when she is not sick is a violation of Jesus' commands in the Scriptures," citing Matthew 9:12 for that proposition. Because Hodges specifically identifies a religious tenet that allegedly conflicts with Effingham's testing requirement, her claim is sufficient to survive a motion to dismiss. *See Jackson v. Methodist Health Servs.*, 121 F.4th 1122, 1126 (7th Cir. 2024) (dismissing a Title VII claim because the plaintiff failed to identify a specific religious tenet or practice that conflicted with COVID-19 testing). It is not for the Court to explore the commands of Hodges' religion or weigh upon the meaning of the scripture she cites. "Courts are not arbiters of scriptural interpretation." *Passarella*, 108 F.4th at 1010 (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 716 (1981)). It is enough that the complaint plausibly suggests that the Policy's testing requirement created a conflict between an employment requirement and Hodges' religious beliefs. *See Bowlin*, 167 F.4th at 476 (explaining that pleading a

generalized objection based on one's "moral conscience" fails to plausibly allege a religious belief or practice under Title VII, while identifying a specific belief or practice that conflicts with the challenged requirement is sufficient).

Hodges has also satisfied the third element of her prima facie case, which requires her to allege that her religious observance or practice was the basis for her termination. Hodges alleges that her religious beliefs prevented her from complying with the Policy, and that her refusal to comply resulted in her placement on unpaid leave and eventual resignation from employment. She further alleges that Effingham's actions were motivated by her refusal to comply with the Policy. These allegations establish the requisite causal connection between her religious practices and the termination of her employment. *See Adeyeye*, 721 F.3d at 454 (finding causation where an employee was absent to observe his religious practices and was fired as a result of that absence).

**II. Undue Hardship**

Exempting Hodges from both options under the Policy, however, would have required Effingham to violate the law, thereby imposing an undue hardship. *See Bowlin*, 167 F.4th at 477. An "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). Although the undue hardship analysis is typically inappropriate at the pleading stage, it is permissible for courts to dismiss "Title VII claims at the pleading stage when the requested accommodation requires the employer to violate the law." *Bowlin*, 167 F.4th at 477 (quoting *McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir. 1992)).

Executive orders by the Governor, including EO-22, have been held to carry the

binding force of law. *Id.*; *see Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1009 (7th Cir. 2021) (finding that similar executive orders pertaining to COVID-19 "fell well within what we understand to be laws, just as rules and adjudications by executive agencies acting under legislative grants of authority have binding force of law."). Title VII does not require employers to grant accommodations that violate state law. *Bowlin*, 167 F.4th at 477-78; *accord Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) ("[C]ourts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law."). Because exempting Hodges from both the testing and vaccination requirements would require Effingham to violate EO-22, her requested accommodation imposes an undue hardship. *See Bowlin*, 167 F.4th at 477-78.

**III. Conflict with Illinois Public Health Code**

Hodges next argues that EO-22 was invalid, and thus cannot be the basis for undue hardship, because it conflicted with the Illinois Public Health Code. *See* 20 ILL. COMP. STAT. 2305/2(d) ("The [State Department of Public Health] may order physical examinations and tests and collect laboratory specimens as necessary for the diagnosis or treatment of individuals in order to prevent the probable spread of a dangerously contagious or infectious disease."); *see also* 20 ILL. COMP. STAT. 2305/2(e) ("The [State Department of Public Health] may order the administration of vaccines, medications, or other treatments to persons as necessary in order to prevent the probable spread of a dangerously contagious or infectious disease.").

In support of her position, Hodges cites the decision in *Austin v. The Board of*

*Education of Community Unit School District #300*, Nos. 2021-CH-500002, 2021-CH-500003, 2021-CH-500005, 2021-CH-500007, 2022 WL 414433 (Ill. Cir. Ct. Sangamon Cty.). In *Austin*, the Sangamon County circuit court issued a temporary restraining order to enjoin the enforcement of several gubernatorial executive orders aimed at addressing the COVID-19 pandemic, including the vaccination and testing requirements contained in EO-22. *Id.* The Sangamon County circuit court did not reach the merits of whether the executive orders violated state law, and no Illinois appellate court further considered whether the temporary restraining order was appropriate because the issue was moot once on appeal. *See Austin v. The Bd. of Educ. of Cmty. Unit Sch. Dist. #300*, 2022 IL App (4th) 220090-U, 2022 WL 500581 (Ill. Ct. App. 2022); *see also Austin v. The Bd. of Educ. of Cmty. Unit Sch. Dist. #300*, 2022 IL 128205, 2022 WL 602455 (Ill. 2022).

It should be noted at the outset that this Court is not bound by the Illinois circuit court's analysis in *Austin*. First, the issuance of a temporary restraining order is not a decision on the merits. *See* FED. R. CIV. P. 65; *Mullin v. Doe*, 609 U.S. 324, 346 (2026) ("When interim relief is sought . . . a court does not make a final decision on any matter necessary to the ultimate judgment."). Therefore, the Sangamon County circuit court's temporary restraining order does not definitively hold that EO-22 conflicted with state law, as Hodges suggests it does. Furthermore, even if the Sangamon County circuit court had issued a decision on the merits, this Court is not bound by intermediate appellate or trial court decisions interpreting state law. *See, e.g.*, *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635-36 (7th Cir. 2002) (rejecting the proposition that federal courts are bound by state appellate court decisions, which necessarily forecloses the same proposition as to state

trial court decisions); *Giovannelli v. Walmart Inc.*, 164 F.4th 1052, 1054-55 (7th Cir. 2026) (noting that, absent controlling state supreme court precedent, federal courts predict how the state's highest court would rule). As far as this Court can determine, no Illinois court has adjudicated on the merits whether EO-22 conflicted with preexisting state law, much less the Illinois Supreme Court. Neither has any federal court.

When Governor Pritzker issued EO-22, he was exercising powers granted to him by the Illinois legislature in the Illinois Emergency Management Agency Act ("IEMA"). (Doc. 13-1, p. 2); 20 ILL. COMP. STAT. 3305/7(1)-(3), (8), (12); 20 ILL. COMP. STAT. 3305/19. The Illinois Health Code, in turn, provides that, "Nothing in this Section shall supersede the current National Incident Management System and the Illinois Emergency Operation Plan or response plans and procedures established pursuant to IEMA statutes." 20 ILL. COMP. STAT. 2305/2(m). The plain meaning of this language suggests that the Health Code preserves the operation of the IEMA statutory framework, including the Governor's authority under that framework. *See Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."). Therefore, EO-22 was a valid exercise of the Governor's authority.

As discussed above, requesting that Effingham violate a valid law poses an undue hardship under the Title VII framework. Accordingly, Hodges has failed to state a claim.

## CONCLUSION

For these reasons, Defendant Effingham Community Unit School District #40's Motion to Dismiss (Doc. 13) is **GRANTED**, and the Complaint is **DISMISSED with**

**prejudice** for failure to state a claim. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: October 28, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**